NOTICE
Decision filed 08/09/17. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2017 IL App (5th) 160274

NO. 5-16-0274

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| QIANG CHENG and JALE TEZCAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 15-MR-52 |
| | ) | |
| SUSAN M. FORD, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Cates and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, Drs. Qiang Cheng and Jale Tezcan, associate professors at Southern Illinois University Carbondale (SIUC), brought this complaint in the circuit court of Jackson County, seeking, *inter alia*, money damages for alleged tortious interference by defendant Dr. Susan M. Ford, SIUC's interim provost and vice chancellor of academic affairs. Dr. Ford filed a motion to dismiss the claim against her under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), arguing that, under the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2016)), she is a State employee immune from suit in circuit court and that, under the Court of Claims Act (705

1

ILCS 505/1 *et seq.* (West 2016)), the Court of Claims has exclusive jurisdiction over the plaintiffs' tort claim seeking money damages. The circuit court disagreed and denied Dr. Ford's motion to dismiss but granted her motion to certify questions for interlocutory appeal. The court found "that the issues of whether Dr. Ford is entitled to sovereign immunity from Plaintiffs['] tort claim seeking money damages filed in Circuit Court pursuant to the Illinois State Lawsuit Immunity Act, when Plaintiffs have alleged that Dr. Ford acted in excess of the express language of the University Policy and that such conduct injured Plaintiffs, and whether such claim must be filed, if at all, in the Illinois Court of Claims pursuant to the Illinois Court of Claims Act, are questions of law as to which there are substantial grounds for difference of opinion, and an interlocutory appeal to the Appellate Court would materially advance the ultimate termination of the litigation."

¶ 2    Dr. Ford filed a timely application for leave to appeal in this court, which was initially denied. She then filed a timely petition for leave to appeal to the Illinois Supreme Court, which denied her petition for leave to appeal but entered a supervisory order directing this court to address the circuit court's certified questions. This court then granted Dr. Ford's application for leave to appeal.

¶ 3    For the reasons that follow, we answer the certified questions in the affirmative, *i.e.*, under the State Lawsuit Immunity Act, Dr. Ford is entitled to sovereign immunity from the plaintiffs' tort claim seeking money damages in circuit court, and the Court of Claims has exclusive jurisdiction over such claims under the Court of Claims Act.

2

¶ 4                               BACKGROUND

¶ 5     As SIUC's interim provost and vice chancellor of academic affairs, Dr. Ford is an employee of the State of Illinois. As faculty members at SIUC, Drs. Cheng and Tezcan are also employees of the State of Illinois.

¶ 6     This case arises out of a graduate student's claims that she submitted scholarly work to Drs. Cheng and Tezcan for publication and that they did not give her appropriate authorship credit for her work. The student submitted a complaint to SIUC officials under SIUC's Academic and Research Integrity and Misconduct: Policy and Procedure (Research Misconduct Policy).

¶ 7     After the student submitted her complaint, Dr. Ford conducted an initial assessment (phase 1) as required by the Research Misconduct Policy and referred the complaint to a faculty inquiry team (phase 2). After gathering information, meeting with the student, and meeting with Drs. Cheng and Tezcan, the inquiry team recommended that the process proceed to an investigation (phase 3). Although the inquiry team stated that it was "unsure whether the complaint qualifies as research misconduct," it found that "further investigation [was] warranted since [Drs. Cheng and Tezcan] were not professional in their dealing with the *** student." As a result of the inquiry team's recommendation, Dr. Ford appointed an investigation panel comprised of faculty members to conduct the investigation in accordance with the Research Misconduct Policy. Drs. Cheng and Tezcan were notified of this action on April 1, 2015.

¶ 8     On April 22, 2015, Drs. Cheng and Tezcan, through their faculty association, filed a grievance, seeking to halt the research misconduct process. On April 24, 2015, Dr.

3

Tezcan also appealed Dr. Ford's decision to initiate an investigation, again seeking to halt the research misconduct process. Shortly thereafter, the research misconduct process was halted to allow resolution of the grievance and appeal.

¶ 9    On May 6, 2015, Drs. Cheng and Tezcan filed a complaint and request for preliminary injunction in the circuit court against Dr. Ford and the Board of Trustees of SIUC. They alleged a due process violation under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2012)) and sought to enjoin the defendants from conducting an investigation into the research misconduct charge.

¶ 10    On May 8, 2015, the defendants removed the action to federal court based on federal question jurisdiction. On June 17, 2015, the federal court held an evidentiary hearing. On July 6, 2015, the federal court dismissed the plaintiffs' due process claim under § 1983 with leave to refile a cognizable claim in State court, finding that the federal court lacked subject matter jurisdiction because the plaintiffs failed to identify a recognized liberty or property interest. On July 7, 2015, both the plaintiffs and the defendants moved to amend/correct the federal court's order. Both motions were denied.

¶ 11    On July 21, 2015, the plaintiffs filed a "motion to reopen" their case in the circuit court, seeking leave to file an amended complaint. On July 22, 2015, the circuit court granted the plaintiffs' motion, and the plaintiffs filed an amended complaint. The amended complaint sought only equitable relief and included identical factual allegations as the initial complaint that had been dismissed by the federal court.

¶ 12    On September 3, 2015, the defendants filed a combined motion to dismiss the plaintiffs' amended complaint under sections 2-615 and 2-619 of the Code (735 ILCS

4

5/2-615, 2-619 (West 2016)). On December 11, 2015, the circuit court denied the defendants' section 2-619 motion to dismiss but granted their section 2-615 motion to dismiss and gave the plaintiffs leave to amend.

¶ 13    On December 31, 2015, the plaintiffs filed a second amended complaint. In count I of the second amended complaint, which is not the subject of this appeal, the plaintiffs asserted a declaratory judgment claim against the Board of Trustees of SIUC for violation of their due process rights under the Research Misconduct Policy.

¶ 14    In count II of the second amended complaint, the plaintiffs asserted, for the first time, a tort claim against Dr. Ford seeking money damages. The plaintiffs claimed that, by refusing to conclude the research misconduct process despite her alleged mandate to do so under the Research Misconduct Policy, Dr. Ford tortiously interfered with their contractual obligation and their prospective economic advantage.

¶ 15    On February 2, 2016, the defendants filed a combined section 2-615 and 2-619 motion to dismiss the plaintiffs' second amended complaint. In the motion, Dr. Ford argued, *inter alia*, that the plaintiffs' tort claim against her should be dismissed under section 2-619 because she is a State employee immune from suit in court pursuant to the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2016)) and that the Court of Claims has exclusive jurisdiction over the plaintiffs' tort claim under the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2016)). In her memorandum of law in support of her motion to dismiss, Dr. Ford noted that the plaintiffs' complaint explicitly stated that her alleged tortious conduct related solely to how she administered the Research Misconduct Policy. On April 4, 2016, the circuit court denied the defendants' motion to dismiss.

5

¶ 16   Meanwhile, the research misconduct process had resumed. On April 5, 2016, the investigation panel found no/insufficient evidence to substantiate allegations of research misconduct against Drs. Tezcan and Cheng.

¶ 17   On May 4, 2016, Dr. Ford filed a motion to certify questions for an interlocutory appeal. On June 2, 2016, the circuit court granted the motion, finding "that the issues of whether Dr. Ford is entitled to sovereign immunity from Plaintiffs['] tort claim seeking money damages filed in Circuit Court pursuant to the Illinois State Lawsuit Immunity Act, when Plaintiffs have alleged that Dr. Ford acted in excess of the express language of the University Policy and that such conduct injured Plaintiffs, and whether such claim must be filed, if at all, in the Illinois Court of Claims pursuant to the Illinois Court of Claims Act, are questions of law as to which there are substantial grounds for difference of opinion, and an interlocutory appeal to the Appellate Court would materially advance the ultimate termination of the litigation."

¶ 18   Dr. Ford filed a timely application for leave to appeal in this court, which was initially denied. She then filed a timely petition for leave to appeal to the Illinois Supreme Court, which denied her petition for leave to appeal but entered a supervisory order, directing this court to address the circuit court's certified questions. This court then granted Dr. Ford's application for leave to appeal.

¶ 19                                    ANALYSIS

¶ 20   The standards governing this appeal are familiar. A motion to dismiss under section 2-619 of the Code admits the legal sufficiency of the complaint but asserts affirmative matter that defeats the claim. *Leetaru v. Board of Trustees of the University of*

6

*Illinois*, 2015 IL 117485, ¶ 40. One of those affirmative matters is that the circuit court lacks subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2016). That is the basis of Dr. Ford's motion filed in this case.

¶ 21    Dr. Ford argues that the plaintiffs filed their tort claim for money damages in the wrong tribunal. She contends that the Court of Claims is the only tribunal authorized by law to consider the plaintiffs' claim against her. The circuit court disagreed and denied her motion to dismiss.

¶ 22    As this appeal involves the question of whether the circuit court lacks jurisdiction over the plaintiffs' tort claim for money damages against Dr. Ford, the standard of review is *de novo*. See *In re Luis R.*, 239 Ill. 2d 295, 299 (2010) ("The absence or presence of jurisdiction is a purely legal question, and our review therefore is *de novo*.").

¶ 23    Dr. Ford's jurisdictional challenge is based on principles of sovereign immunity. "The doctrine of sovereign immunity was abolished in Illinois by the 1970 Constitution '[e]xcept as the General Assembly may provide by law.' " *Leetaru*, 2015 IL 117485, ¶ 42 (quoting Ill. Const. 1970, art. XIII, § 4). As it was authorized to do under this provision, the General Assembly reinstated the doctrine of sovereign immunity by enacting the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2016)). *Leetaru*, 2015 IL 117485, ¶ 42. Section 1 of the State Lawsuit Immunity Act states that, except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2016)) and several other named statutes, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2016). Section 8 of the Court of Claims Act, in turn, states that the Court of Claims shall have exclusive jurisdiction over nine enumerated matters, including "[a]ll

claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 2016).

¶ 24 This language is clear and unambiguous; all claims against the State for tort damages must be filed in the Court of Claims, and no other tribunal has jurisdiction over such a claim. *Fritz v. Johnston*, 209 Ill. 2d 302, 310 (2004). The issue is, thus, whether the claim set out in count II of the plaintiffs' second amended complaint involves a claim against the State.

¶ 25 In count II, the plaintiffs did not purport to assert a claim against the State. Rather, they named as a defendant Dr. Ford, a State employee. Dr. Ford contends, however, that the exclusive jurisdiction provision of the Court of Claims Act should nevertheless apply because count II is tantamount to an action against the State itself.

¶ 26 Dr. Ford is correct that the formal designation of the parties is not dispositive for purposes of the Court of Claims Act. *Leetaru*, 2015 IL 117485, ¶ 44. In determining whether sovereign immunity applies in a given case, substance takes precedence over form. *Id.* That an action is nominally one against an individual State employee does not mean that it will not be considered as one against the State itself. *Id.*

¶ 27 The determination of whether an action is, in fact, one against the State and, thus, one that must be brought in the Court of Claims depends on the "issues involved" and "the relief sought." *Id.* ¶ 45.

¶ 28 When the "issue involved" is a State employee's alleged tortious conduct, the reviewing court must determine the "source of the duty" the State employee is charged

8

with breaching. *Loman v. Freeman*, 229 Ill. 2d 104, 112-13 (2008). Under the "source of the duty" test articulated by our supreme court, when the claim involves the breach of a duty imposed on the State employee *solely* by virtue of his or her State employment, the Court of Claims has exclusive jurisdiction. *Id.* at 113. However, when the duty the State employee is charged with breaching is imposed independently of his or her State employment, the claim may be heard in circuit court. *Id.*

¶ 29     As to the "relief sought," an action naming a State employee as a defendant will be found to be a claim against the State where a judgment in favor of the plaintiffs could operate to control the actions of the State or subject it to liability. *Id.*

¶ 30     Under the "source of the duty" test, we must determine whether the duty Dr. Ford is charged with breaching was imposed on her *solely* by virtue of her State employment. If so, then she may only be sued in tort for money damages in the Court of Claims.

¶ 31     The plaintiffs acknowledge that Dr. Ford was authorized to administer the Research Misconduct Policy as part of her official duties and that, under the Research Misconduct Policy, she was authorized to appoint an inquiry team to inquire into the student's research misconduct claim. They also acknowledge that the inquiry team recommended that Dr. Ford proceed to the investigation phase.

¶ 32     The crux of the plaintiffs' claim against Dr. Ford is that, because the inquiry team "did not identify any possible Research Misconduct as defined within the Policy," Dr. Ford was required under the Research Misconduct Policy to conclude the research misconduct process and not proceed to the investigation phase, even though the inquiry team recommended that she proceed to the investigation phase. The plaintiffs' claim

9

hinges upon their interpretation of the phrase in the Research Misconduct Policy "[i]f an allegation is found to be unsupported" by the inquiry team and their assertion that the inquiry team found "an allegation *** to be unsupported." However, by stating that it was "unsure whether the complaint qualifies as research misconduct," the inquiry team did not find the research misconduct allegation to be unsupported.

¶ 33   In any event, the plaintiffs' tort claim for money damages against Dr. Ford is one that may be brought only in the Court of Claims because Dr. Ford was discharging duties that arose *solely* by virtue of her State employment. Because she was a State employee, and only because she was a State employee, she was responsible for administering the Research Misconduct Policy. The alleged "breach" of that duty, according to the plaintiffs, occurred when Dr. Ford decided to move the process from the inquiry phase to the investigation phase after the inquiry team recommended that she do so. Dr. Ford owed no duty to the plaintiffs independent of her role as interim provost. Moreover, it is undisputed that Dr. Ford had the authority to determine whether the research misconduct process should proceed from the inquiry phase to the investigation phase.

¶ 34   The plaintiffs nonetheless repeatedly asserted in their second amended complaint that Dr. Ford "exceeded her authority" by not concluding the research misconduct process. These conclusory allegations are simply a statement of the plaintiffs' opinion that Dr. Ford was required to terminate the research misconduct process, even though the inquiry team recommended that the process continue to the investigation phase. Even assuming that Dr. Ford acted erroneously, that she misinterpreted the Research Misconduct Policy, or that she could or should have rejected the inquiry team's

recommendation to proceed to the investigation phase, an erroneous judgment or action by Dr. Ford does not change the fact that she acted *solely* as a State employee in deciding to move forward with the process. The "source of the duty" she owed to the plaintiffs was, thus, derived solely from the Research Misconduct Policy, which empowered her to administer the research misconduct process. Because Dr. Ford's decision to move the process from the inquiry phase to the investigation phase fell squarely within her duties as a State employee, duties she has only because she is the interim provost, under the "source of the duty" test, the plaintiffs' tort claim for money damages against her may not be brought in circuit court.

¶ 35   Moreover, under the "control" test, even if the source of the duty owed by Dr. Ford arose independently from State employment, the Court of Claims would still have exclusive jurisdiction over the plaintiffs' tort claim seeking money damages against her because the claim seeks relief that "could operate to control the actions of the State or subject it to liability." See *Loman*, 229 Ill. 2d at 113.

¶ 36   The plaintiffs' claim against Dr. Ford is based on the theory that she failed to correctly apply the Research Misconduct Policy, which she had the authority to interpret and administer. Whether she applied the Research Misconduct Policy correctly or incorrectly is not relevant to the jurisdictional issues raised in this appeal. Instead, the focus of our inquiry is whether a judgment in the circuit court for money damages "could control" the actions of Dr. Ford, acting on behalf of the State. If we were to find that the circuit court has jurisdiction to hear the plaintiffs' tort claim for money damages against Dr. Ford, the resolution of the plaintiffs' claim would necessarily dictate what decision

11

Dr. Ford should have made (according to a jury) regarding whether she should have accepted the inquiry team's recommendation to proceed to the investigation phase. A judgment for money damages against Dr. Ford could control the way she administers the Research Misconduct Policy, a task that was delegated to her in her official role as interim provost.

¶ 37    Under both the "source of the duty" test and the "control" test, the plaintiffs' tort claim against Dr. Ford for money damages may not be brought in circuit court. Under the State Lawsuit Immunity Act and the Court of Claims Act, and under a long line of Illinois Supreme Court precedent, the circuit court lacks jurisdiction over the plaintiffs' tort claim for money damages against Dr. Ford.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, the certified questions are answered in the affirmative, and the cause is remanded for further proceedings consistent with this decision.

¶ 40    Certified questions answered; cause remanded.

12

2017 IL App (5th) 160274

NO. 5-16-0274

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| QIANG CHENG and JALE TEZCAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 15-MR-52 |
| | ) | |
| SUSAN M. FORD, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**  August 9, 2017

_____

**Justices:**    Honorable Thomas M. Welch, J.

Honorable Judy L. Cates, J., and
Honorable David K. Overstreet, J.,
Concur

_____

**Attorneys**   Ian P. Cooper, Mollie G. Mohan, Jenna M. Lakamp, Tueth
**for**         Keeney Cooper Mohan & Jackstadt, P.C., 34 North Meramec
**Appellant**   Avenue, Suite 600, St. Louis, Missouri 63105

_____

**Attorneys**   Shari R. Rhode, Martin D. Parsons, Rhode & Jackson, P.C.,
**for**         1405 West Main Street, P.O. Box 99, Carbondale, IL 62903
**Appellees**

_____